B. Bryan Larey, Commissioner of Revenues, State of Arkansas v. O. C. Morris

4663                                                    432 S.W. 2d 861

Opinion Delivered October 28, 1968

*Lyle Williams, John F. Gawtney* and *Hugh L. Brown* for appellant.

*Laws & Schulze* for appellee.

Carleton Harris, Justice. A motor vehicle accident, involving O. C. Morris, appellee herein, and James Stewart, occurred near Cabot on November 19, 1965. Ten days later, pursuant to the provisions of the Arkansas Financial Responsibility Law (Act 347 of 1953), Morris filed an accident report with the Commissioner of Revenues, the report reflecting that he and his vehicle, which he was driving at the time of the accident, were covered by liability insurance with the Republic Casualty Company of Little Rock. On February 4,

1966, Stewart filed similar proof of financial responsibility, and the commissioner closed his file on the accident. On February 27, 1967, a judgment was entered against Morris in favor of Stewart in the Circuit Court of Lonoke County, and in the amount of $7,045.00[1]. Appellee failed to pay the judgment, and Stewart's attorney discovered that Morris' insurance carrier, Republic Casualty Company, was in receivership[2]; accordingly, it was no longer financially able to pay the judgment. On August 16, 1967, in compliance with the provisions of Ark. Stat. Ann. § 75-1450 (Repl. 1957) Stewart filed a certified copy of the unsatisfied judgment and certificate of fact with the commissioner. Thereupon, the commissioner, under the provisions of Section 75-1452 suspended the license and registration of Morris. Appellee appealed to the Pulaski County Circuit Court (under the authority of Section 75-1416), and that court reversed the order of the commissioner and reinstated Morris' license and registration. From the judgment so entered, the Department of Revenues brings this appeal.

Appellant relies upon Section 75-1455, which provides:

"No license, registration, or nonresident's operating privilege of any person shall be suspended under the provisions of this article [§§ 75-1443—75-1477] *if the department shall find that an insurer was obligated to pay the judgment upon which suspension is based, at least to the extent and for the amounts required in this act* [§§ 75-1401—

---

[1]When sued, Morris, according to the appeal filed with the Circuit Court, notified Republic of the suit, and was advised that the matter would be taken care of. An answer was filed by Little Rock attorneys at the instance of the company. Apparently, the attorneys withdrew from the case, and Morris set out that he was never notified of the date of trial. A default judgment was rendered.

[2]This company was apparently placed in receivership after proceedings were instituted in the Circuit Court of Pulaski County against it by the State Insurance Commissioner.

75-1493], *but has not paid such judgment for any reason. A finding by the department that an insurer is obligated to pay a judgment shall not be binding upon such insurer and shall have no legal effect whatever except for the purpose of administering this section*[3]. Whenever in any judicial proceedings it shall be determined by any final judgment, decree or order that an insurer is not obligated to pay any such judgment, the department, notwithstanding any contrary finding theretofore made by it shall forthwith suspend the license and registration and any nonresident's operating privilege of any person against whom such judgment was rendered, as provided in Section 52 [§ 75-1452]."

In the case before us, the commissioner upon being advised that the judgment was unsatisfied, made a finding that the insurer was *not* obligated to pay the judgment. It will be noted that this particular language is not contained in the preceding section, but appellant states that, if it is authorized to find that an insurer was obligated to pay the judgment, it certainly had the authority to find that the insurer was not obligated to pay same.

There is no point in discussing the authority of the commissioner to make the rulings provided for in the section, nor to go into the question of the procedure, or quantum of proof necessary to overturn a ruling by the commissioner, since we think it is obvious that error was made in the commissioner's ruling at the outset.

The record reflects that Morris purchased the insurance from Republic on October 3, 1965; that this policy was in force at the time of the accident which occurred on November 19, 1965; further, it also appears that it was in force (by renewal) at the time the judgment was rendered against him on February 27, 1967. Morris re-

---

[3]Emphasis supplied.

456

ceived notice from the Insurance Commissioner that Republic Casualty Company had been placed in receivership[4]. As far as the record shows, the litigation against Republic is still pending, but, at any rate, Stewart's judgment was apparently obtained before Republic was declared insolvent. We know of no Arkansas court decision, nor until 1959, any Arkansas statute, which holds or provides that, when an insurance company has gone into receivership, it is no longer liable for previous judgments rendered against its policyholders. Of course, a judgment creditor probably would be able to collect only a small portion of the amount due him under a judgment—but this fact has nothing to do with the company's actual liability. However, in 1959, the General Assembly enacted the Arkansas Insurance Code. A part of that code, Ark. Stat. Ann. § 66-4829 (Repl. 1966), deals with the allowance of claims against delinquent insurance companies. Subsection (1) deals with contingent and unliquidated claims. Sub-section (2) deals with the rights of a person who has a cause of action against an insured, the insurer having been adjudicated insolvent, and Subsection (3), pertinent hereto, reads as follows:

"No judgment against such an insured taken after the date of entry of the liquidation order shall be considered in the liquidation proceedings as evidence of liability, or of the amount of damages, and *no judgment against an insured taken by default,* or by collusion *prior to the entry of the liquidation order shall be considered as conclusive evidence in the liquidation proceedings, either of the liability of such insured to such person upon such cause of*

<hr>

[4]An exact quote of the notice is set out in appellee's brief, as follows: "As of March 13, 1967, your insurance policy with the Republic Casualty Company is without benefit to you regarding law suits or claims occurring after the date of receivership." Oral testimony of Morris was taken in the present litigation before the Circuit Court, but was not reported, and this notice was apparently introduced at that time.

*action or of the amount of damages to which such person is therein entitled[5]*".

The italicized portion is here pertinent, Stewart's judgment having been rendered prior to the delinquency proceeding against Republic, the judgment, however, being obtained by default.

We think the language in Section 75-1455, "obligated to pay a judgment," or under appellant's reasoning, "not obligated to pay a judgment," means legally obligated[6]. Except for Section 66-4829, this would be definite, but even under that section, *as of now,* the judgment stands—and will continue to stand until the receiver holds that Morris was not liable to Stewart, or Stewart was not entitled to the amount of damages awarded. Of course, the receiver's findings are subject to review by the Circuit Court.

The department argues that an adverse ruling to its position will seriously hinder effective enforcement of the act. From its brief:

"The suspension of the judgment debtor's license and registration for nonpayment of the judgment is a powerful lever to aid in collection of the judgment, at least to the limits provided for under the financial responsibility law. To deprive a person of his privilege to operate or register a motor vehicle is to place him under severe financial and personal handicaps. Assets may be converted into liquid form and concealed from execution, but if the defendant is placed afoot for life or until he satisfies the judgment sooner or later he will do so if at all possible.

---

[5]Emphasis supplied.

[6]Let it be remembered that this is not a bankruptcy proceeding in the Federal Court. However, it might be pointed out here that, under Section 75-1457, a discharge in bankruptcy following the rendering of a judgment does not relieve the judgment debtor from any requirements fround in Sections 75-1443—75-1477.

Therefore, the Department is the last resort of any plaintiff whose unsatisfied judgment has arisen from a motor vehicle accident. If the Department indulges in the legal fiction that the insurance company is obligated to pay this judgment, then in effect, the Department has denied any recovery to the plaintiff. He, the plaintiff, will then have suffered a wrong without a remedy.''

It is asserted that when the insurance company becomes insolvent, as in the case at hand, the commissioner should find that the insurer was not obligated to pay the judgment, thus requiring the judgment debtor himself to pay or suffer the suspension of license and registration.

We agree that to deprive a person of his privilege to operate or register his motor vehicle is to place him under a severe handicap, but under the circumstances herein, the judgment debtor, like the plaintiff, will also have suffered a wrong without a remedy. Here, appellee purchased liability insurance, and thought that he was fully covered. There was no reason for him to think otherwise, for at the time he purchased it—and at the time of the accident—and even at the time of the judgment rendered against him, Republic Casualty Company was authorized by the State Insurance Department to do business in this state. The Revenue Commissioner himself accepted appellee's proof of financial responsibility when he reported, ten days after the accident, that he was covered by liability insurance with Republic. What did Morris do—or fail to do— that justifies the loss of his license? The average citizen does not demand a financial sheet from an insurance company before he purchases a policy. The most that could have been done would have been for Morris to make inquiry from the State Insurance Department —and, if this had been done, he would evidently have learned nothing that would have put him on guard against purchasing a policy, since the company was authorized at that time to do business.

Of course, Stewart can still collect his judgment against Morris if the latter has sufficient property, or sufficient income beyond exemption, upon which to levy an execution. No protection has been afforded appellee in this respect. He has simply been restored the privilege of operating his vehicle, a dump truck used by appellee in earning his livelihood.

Affirmed.